IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION

| | | |
|---|---|---|
| LATISHA MOORE, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO.: |
| | ) | |
| V. | ) | PLAINTIFF DEMANDS TRIAL |
| | ) | BY STRUCK JURY |
| MONTGOMERY WATERWORKS, | ) | |
| LLC D/B/A THE TRILOGY | ) | |
| ASCENT HOSPITALITY | ) | |
| MANAGEMENT CO., LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Latisha Moore, by and through her attorney of record, and files this Complaint for Damages to be answered by the Defendant pursuant to the Federal Rules of Civil Procedure.

### I.  JURISDICTION

1. This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This is a suit authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

3. This suit is authorized and instituted under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e, et seq. (Title VII).

4. This suit is authorized and instituted under the Pregnant Workers Fairness Act (PWFA).

5. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).

6. Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II. PARTIES

7. Plaintiff, Latisha Moore, ("Plaintiff" or "Moore") is a resident of Alabama, but performed work for the Defendant in the counties composing the Northern District of Georgia during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Division.

8. Defendant Montgomery Waterworks, LLC d/b/a The Trilogy Ascent Hospitality Management, LLC ("Defendant" or "Ascent") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama.

9. Defendant employed at least fifteen (15) people during the current or preceding calendar year.

### III. FACTS

10. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

11. On or about January 10, 2023, Moore began working for the Defendant as a Human Resource Generalist.

12. During her employment, Moore became pregnant with twins.

13. On or about May 29, 2023, Moore was admitted to the hospital because her water broke within her fourth month of pregnancy, also known as PPRM-preterm premature rupture of membranes.

14. PPRM is a pregnancy complication where the sac (amniotic membrane) surrounding the baby breaks (ruptures) before week 37 of pregnancy.

15. Once the sac breaks there is an increased risk of infection, risk of having the placenta separate from the uterus, risk of problems with the umbilical cord, and a higher risk of having a premature child birth and/or the need for cesarean section (C-section) delivery.

16. That same day, Moore called her General Manager Anthony (Tony) (Last Name Unknown) to inform him she was admitted to the hospital and placed on bedrest there until her delivery.

17. Generally, women who experience PPRM are placed on bedrest, and admitted into the hospital.

18. On or about May 30, 2023, Tony (Last Name Unknown) contacted Moore and told her that he was released from the company and that she should contact Doug Marks, VP of Operations, going forward to update him regarding her hospitalization.

19. That same day, Moore called Doug Marks to inform him she was still in the hospital due to her condition and Mr. Marks told her to let him know when she was released and she agreed to do so.

20. On or about June 5, 2023, Moore was in contact with Mr. Marks and told him she was waiting for an excuse from her doctor.

21. Mr. Marks asked for the name of the hospital so he could verify.

22. On or about June 6, 2023, Moore submitted medical paperwork from her doctor to her employer.

23. On or about June 8, 2023, Moore sent her doctor's excuse which stated she would be hospitalized until delivery and the expected delivery date was October 27, 2023.

24. On or about June 12, 2023, Mr. Marks contacted the hospital, and they claimed they did not have any information under Moore's name.

25. Moore spoke with Mr. Marks and told him it could be under her maiden name or her married name.

26. On or about June 13, 2023, Moore delivered her babies, but they did not survive.

27. Moore needed recovery and immediately began suffering from Post-Partum Depression.

28. That same day, Moore was terminated by email.

29. Mr. Marks stated he could not sit around and wait to see what happens with Moore, he could not go until October without on-site coverage, and so he let Moore go but told her she could reapply when she got out of the hospital.

30. Before all of this happened, Moore was allowed to work from home without issue.

31. Other workers in Human Resources are allowed to work from home without issue.

32. Moore could have worked remotely during her bedrest.

33. Mr. Marks did not engage in any interactive process with Moore.

34. Allowing Moore to work remotely would not have imposed an undue hardship as Moore was previously allowed to work remotely, and others were allowed to work remotely.

35. On or about June 14, 2023, while Moore was still recovering in the hospital, her supervisor contacted her and stated he saw Moore stealing on video's, which was false.

36. On or about July 9, 2023, Moore applied for the position.

37. On or about July 16, 2023, Moore was notified she did not receive the position by email.

38. The position was filled on July 24, 2023.

## IV. CLAIMS

### COUNT I - TITLE VII – SEX/GENDER/PREGNANCY- DISCHARGE

39. Plaintiff incorporates by reference and realleges paragraphs 11-38 as if set out herein.

40. The Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she has been unlawfully discriminated against based on her sex/gender/pregnancy or pregnancy related condition.

41. Plaintiff is Female, was pregnant, and was suffering from pregnancy related condition of PPRM.

42. Plaintiff was qualified for the position.

43. On or about June 13, 2023, Defendant terminated Plaintiff's employment.

44. Plaintiff was terminated *because* of her pregnancy or pregnancy related condition as Mr. Marks stated he could not sit around and wait to see what happens with Moore's pregnancy.

45. Defendant's actions in terminating Plaintiff's employment violated Title VII.

46. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

47. Plaintiff's sex/gender/pregnancy or pregnancy related condition was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

48. Because of Defendant's discriminatory decision made in whole or in part because of sex/gender/pregnancy or pregnancy related condition, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## **COUNT II - TITLE VII – SEX/GENDER/PREGNANCY- FAILURE TO ACCOMMODATE**

49. Plaintiff incorporates by reference and realleges paragraphs 11-38 as if set out herein.

50. The Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she has been unlawfully discriminated against based on her sex/gender/pregnancy or pregnancy related condition.

51. Plaintiff suffered from PPRM.

52. PPRM is a pregnancy complication where the sac (amniotic membrane) surrounding the baby breaks (ruptures) before week 37 of pregnancy.

53. Once the sac breaks there is an increased risk of infection, risk of having the placenta separate from the uterus, risk of problems with the umbilical cord, and a higher risk of having a premature child birth and/or the need for cesarean section (C-section) delivery.

54. Plaintiff was placed on bedrest and admitted into the hospital.

55. Plaintiff's PPTM affect hers such that the major life activities of being able to carry a baby to term, reduced defenses to infection, and being able to walk around, drive a car, go to work, and generally take care of oneself, are significantly restricted as compared to the average person in the general population.

56. Plaintiff requested the reasonable accommodation of the ability to be on bedrest until the delivery of the babies which could have included either leave or remote work.

57. Plaintiff was able to perform the essential functions of her job with accommodation for her pregnancy related decision.

58. The Defendant provided others who were similar in their inability to work an accommodation of reasonable leave.

59. The Defendant provided others who were able to work, accommodations of working remotely.

60. Instead of discussing alternatives with Plaintiff, the Defendant simply terminated Plaintiff's employment, telling her they could not wait to see what happens.

61. As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT III - TITLE VII – RETALIATION

62. Plaintiff incorporates by reference and realleges paragraphs 11-38 as if set out herein.

63. The Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she has been unlawfully retaliated against based on her protected activities.

64. Plaintiff engaged in a protected activity when she requested the accommodation of the ability to be on bed rest for the duration of her pregnancy.

65. Plaintiff was terminated *because* of her request for accommodations.

66. Plaintiff was terminated *because* she requested the ability to be on bedrest for the duration of her pregnancy as Mr. Marks stated he could not sit around and wait to see what happens with Moore's pregnancy.

67. But for this request, Plaintiff would not have been terminated.

68. Plaintiff was not rehired in retaliation for her request for accommodations.

69. Plaintiff was not rehired in close temporal proximity to her request for the ability to be placed on bed rest for the duration of her pregnancy.

70. As a result of Defendant's violation of PWFA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT IV- PWFA –DISCRIMINATORY DISCHARGE

71. Plaintiff incorporates by reference and realleges paragraphs 11-38 as if set out herein.

72. The Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she has been unlawfully discriminated against based on her pregnancy or pregnancy related condition.

73. Plaintiff is Female, was pregnant, and was suffering from pregnancy related condition of PPRM.

74. Plaintiff was qualified for the position.

75. On or about June 13, 2023, Defendant terminated Plaintiff's employment.

76. Plaintiff was terminated *because* of her pregnancy or pregnancy related condition as Mr. Marks stated he could not sit around and wait to see what happens with Moore's pregnancy.

77. Defendant's actions in terminating Plaintiff's employment violated Title PWFA.

78. Because of Defendant's violation of PWFA, Plaintiff has been damaged, suffering loss of pay and benefits.

79. Plaintiff's pregnancy or pregnancy related condition was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

80. Because of Defendant's discriminatory decision made in whole or in part because pregnancy or pregnancy related condition, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT V - PWFA–- FAILURE TO ACCOMMODATE

81. Plaintiff incorporates by reference and realleges paragraphs 11-38 as if set out herein.

82. Plaintiff was pregnant and suffered from PPRM.

83. PPRM is a pregnancy complication where the sac (amniotic membrane) surrounding the baby breaks (ruptures) before week 37 of pregnancy.

84. Once the sac breaks there is an increased risk of infection, risk of having the placenta separate from the uterus, risk of problems with the umbilical cord, and a higher risk of having a premature child birth and/or the need for cesarean section (C-section) delivery.

85. Plaintiff was placed on bedrest and admitted into the hospital.

86. Plaintiff's PPTM affects her such that the major life activities of being able to carry a baby to term, reduced defenses to infection, and being able to walk

around, drive a car, go to work, and generally take care of oneself, are significantly restricted as compared to the average person in the general population.

87. On or about June 13, 2023, Defendant terminated Plaintiff's employment.

88. Plaintiff was terminated *because* of her pregnancy related condition as Mr. Marks stated he could not sit around and wait to see what happens with Moore's pregnancy.

89. Defendant's actions in terminating Plaintiff's employment violated PWFA.

90. Because of Defendant's violation of PWFA, Plaintiff has been damaged, suffering loss of pay and benefits.

91. Plaintiff's pregnancy or pregnancy related condition was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

92. Because of Defendant's discriminatory decision made in whole or in part because of her pregnancy or pregnancy related condition, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## **COUNT VI - PWFA – RETALIATION**

93. Plaintiff incorporates by reference and realleges paragraphs 11-38 as if set out herein.

94. The Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she has been unlawfully retaliated against based on her protected activities.

95. Plaintiff engaged in a protected activity when she requested the accommodation of the ability to be on bed rest for the duration of her pregnancy.

96. Plaintiff was terminated *because* of her request for accommodations.

97. Plaintiff was terminated *because* she requested the ability to be on bedrest for the duration of her pregnancy as Mr. Marks stated he could not sit around and wait to see what happens with Moore's pregnancy.

98. But for this request, Plaintiff would not have been terminated.

99. The Plaintiff reapplied to work for the Defendant.

100. Plaintiff was not rehired in retaliation for her request for accommodations.

101. Plaintiff was not rehired in close temporal proximity to her request for the ability to be placed on bed rest for the duration of her pregnancy.

102. Because of Defendant's retaliatory decisions were made in whole or in part because of her protected activities, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

### **COUNT VII - ADAAA – DISCRIMINATORY DISCHARGE**

103. Plaintiff incorporates by reference and realleges paragraphs 11-38 as if set out herein.

104. The Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she has been unlawfully retaliated against based on her disabled condition.

105. The plaintiff suffered from PPRM.

106. PPRM is a pregnancy complication where the sac (amniotic membrane) surrounding the baby breaks (ruptures) before week 37 of pregnancy.

107. Once the sac breaks there is an increased risk of infection, risk of having the placenta separate from the uterus, risk of problems with the umbilical cord, and a higher risk of having a premature child birth and/or the need for cesarean section (C-section) delivery.

108. Plaintiff was placed on bedrest and admitted into the hospital.

109. Plaintiff's PPTM affect hers such that the major life activities of being able to carry a baby to term, reduced defenses to infection, and being able to walk around, drive a car, go to work, and generally take care of oneself, are significantly restricted as compared to the average person in the general population.

110. Plaintiff was terminated *because* of her disabled condition.

111. Plaintiff was terminated *because* of her disabled condition as Mr. Marks stated he could not sit around and wait to see what happens with Moore's pregnancy.

112. But for this request, Plaintiff would not have been terminated.

113. Because of Defendant's discriminatory decision made in whole or in part because of her disabled condition, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## **COUNT VIII - ADAAA – FAILURE TO ACCOMMODATE**

114. Plaintiff incorporates by reference and realleges paragraphs 11-38 as if set out herein.

115. Plaintiff has established by both direct and circumstantial evidence that the Plaintiff was discriminated against based on her disability.

116. Plaintiff suffered from PPRM.

117. PPRM is a pregnancy complication where the sac (amniotic membrane) surrounding the baby breaks (ruptures) before week 37 of pregnancy.

118. Once the sac breaks there is an increased risk of infection, risk of having the placenta separate from the uterus, risk of problems with the umbilical cord, and a higher risk of having a premature child birth and/or the need for cesarean section (C-section) delivery.

119. Plaintiff was placed on bedrest and admitted into the hospital.

120. Plaintiff's PPTM affect hers such that the major life activities of being able to carry a baby to term, reduced defenses to infection, and being able to walk

around, drive a car, go to work, and generally take care of oneself, are significantly restricted as compared to the average person in the general population.

121. Plaintiff requested the reasonable accommodation of the ability to be on bedrest until the delivery of the babies which could have included leave, or remote work.

122. Plaintiff was able to perform the essential functions of her job with accommodation for her disability.

123. The Defendant provided others who were similar in their inability to work an accommodation of unpaid leave for a reasonable duration.

124. The Defendant provided others who were able to work, accommodations of working remotely.

125. The Defendant failed to engage in the interactive process required by the Americans with Disabilities Act even though Plaintiff was able to perform the essential functions of her job with accommodations.

126. Instead, the Defendant terminated the Plaintiff's employment telling her they could not wait to see what happens.

127. As a result of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

**COUNT IX - ADA – RETALIATION**

128. Plaintiff incorporates by reference and realleges paragraphs 11-38 as if set out herein.

129. The Plaintiff has established a convincing mosaic of direct and circumstantial evidence that she has been unlawfully retaliated against based on her protected activities.

130. Plaintiff engaged in a protected activity when she requested the accommodation of the ability to be on bed rest because of her PPRM.

131. Plaintiff was terminated *because* of her request for accommodations.

132. Plaintiff was terminated *because* she requested the ability to be on bedrest for the duration of her pregnancy as Mr. Marks stated he could not sit around and wait to see what happens with Moore's pregnancy.

133. But for this request, Plaintiff would not have been terminated.

134. The Plaintiff reapplied to work for the Defendant.

135. Plaintiff was not rehired in retaliation for her request for accommodations.

136. Plaintiff was not rehired in close temporal proximity to her request for the ability to be placed on bed rest for the duration of her pregnancy.

137. Because of Defendant's retaliatory decisions were made in whole or in part because of her protected activities, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

138. Because of Defendant's violation of the ADA, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## V.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.     Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the Americans with Disabilities Act;

B.     Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

C.     Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Pregnant Workers Fairness Act.

D.     Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

E. Award back pay (with prejudgment interest), with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

F. Attorneys' fees and costs;

G. Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

H. Any different or additional relief as determined by the Court to which Plaintiff is entitled.

**THE PLAINTIFF REQUESTS A JURY TRIAL**

_____
Patricia A. Gill

**OF COUNSEL:**

The Workers' Firm
2 20th Street North, Suite 900
Birmingham, Alabama 35203
T: 205.329.6392
trish@theworkersfirm.com

**PLEASE SERVE DEFENDANT AS FOLLOWS**

Montgomery Waterworks, LLC d/b/a Ascent Hospitality Management LLC
Care of Registered Agent, John Tampa
60 Wasden Road
Hope Hull, Alabama 36043